The Honorable Judges of the United States Court of Appeals in and for the Seventh Judicial Circuit. Hear ye, hear ye, hear ye. All persons having business before this Honorable Court are admonished to draw near and give their attention as the Court is now sitting. God save the United States and this Honorable Court. Good morning, ladies and gentlemen. The first case this morning is U.S. v. Barr. Mr. Leonard. Good morning, may it please the Court. Mike Leonard on behalf of Mr. Barr. We're seeking a remand for a resentencing in this case as well as an evidentiary hearing and complete production of Brady materials. I'd like to first address the three issues that relate to what I'll call the Saudi or Saudi Arabia issues. The first is the trial court's failure and outright refusal to consider mitigating evidence under Section 3553. In this case, as the Court will recall, on the eve of what was supposed to be Mr. Barr's December 2018 sentencing, the government produced a trove of documents relating to Mr. Barr's arrest and detention in Saudi Arabia. It was our position that those materials should be considered in mitigation to the extent the government of the United States participated in his arrest or his incarceration in Saudi Arabia was related to this case. And it was clear that the District Court did not understand or apply the issue at the November 30, 2018 appearance before the Court. Can I ask you a question that affects all of your Brady issues? Have you seen the Brady materials now? I mean, I understand that you needed clearance that you did not have right before the sentencing hearing. But at this point, has Mr. Barr been able to find out what those Saudi Arabian materials contained? No. Not the classified materials. And if you recall, Judge, in probably early 2018, Mr. Barr and his then-counsel were allowed to look at the classified materials. I came into the case in November of 2018. I was denied access to those materials, the classified ones. And in addition, Your Honor, there was a series of emails between me and the AUSA at the time, which was attached to the docket in connection with our motion to dismiss the indictment for continuance and to withdraw the plea. And in that series of emails between me and the AUSA, he was not definitively able to state that the classified memos that I was not allowed to see, whether there were additional memos beyond that that had not even been seen by his former counsel. And those emails between me and the AUSA are attached to that briefing. So the answer to your question would be no. And getting back to the 3553 issue, with no disrespect to the district court, they didn't understand how that issue related to 3553. And I say that based upon the court's own statements, not my own interpretation. At the November 30, 2018 hearing, the court stated, and this is at Appendix 75, Saudi Arabia issue, what is that? Your client has pleaded guilty to bank fraud and wire fraud. And then at page 77 and 78, the court says, the fact that Mr. Bauer found himself in Arabia is unfortunate, apparently. But he is now in the United States and subject to the jurisdiction of this court. And he later says, United States versus Kashami has dealt with many of these issues. Your client is subject to the jurisdiction of this court. And I explained to the judge many times that we weren't contesting the jurisdiction of the judge to hear our case or these charges to be held in the U.S. case, that the purpose of the 3553 issue in the Brady material was to make the argument in mitigation under 3553 that he could consider and should consider Mr. Bauer's arrest and incarceration for a long period of time in Saudi Arabia because it was at the behest of the United States government. So since he misapprehended the issue, he further states in his January 7, 2019 opinion, defendant has the discovery necessary for a sentencing, a sentencing that pertains to defendant's illegal conduct perpetrated in the Northern District of Illinois, not Saudi Arabia. But counsel, it seems to me that what the district court was saying, and this is abuse of discretion review, is that this wasn't material. I mean, for it to be Brady evidence, you know, it has to be material under the first prong. And I think what the district judge was saying, right, was that, listen, he's being tried for fraud in the Northern District of Illinois, and whatever time he spent in the Saudi Arabian prison, whether the United States was involved in that or not, we'll just bracket that. Maybe he has a 1983 claim, well, maybe he has a Bivens claim, but that it doesn't bear on his responsibility for the fraud. And I guess I'm having a hard time tracking why that was an abuse of discretion. Well, I would just disagree with you, Judge, because based upon his own words, the way he's framing the issue is not that, hey, I've looked at the material, and under 3553, if he was detained in Saudi Arabia for a particular time at the behest of the U.S. government arising out of this case, that's something I find not material to my decision. That's not what he said. He misapprehended what the material was being used for. And then when we get to the sentencing hearing, Your Honor, I think that's even more instructive. The government approaches him at the beginning of the hearing, giving him notice the day before that they want to show him classified materials to try to make the argument, which was, for the first time, that these materials were not material. They wanted to show him the classified documents. We objected, which was consistent with our position that we should be able to see whatever the government sees, whatever the court sees. And in response, Judge Strips-Hentz said, no, I'm not going to hear anything about Saudi Arabia. But if he had seen it and you hadn't seen it, then you would be here objecting that he was making a decision based on material that you didn't have access to. Judge, I don't know what I would be doing, but at the time, obviously, I had to take a position that was consistent with our positions. It wasn't fair to us to allow—there was two issues at that time. Classified materials we hadn't seen, and then potentially, based upon a string of emails between me and the AUSA, additional classified materials, which had not even been produced. Counsel, for any of this to matter under Brady, you have to show that it was material. And your argument is essentially that he should have gotten some kind of credit for his sentence here for the time he spent in the Saudi Arabian prison, and you haven't shown why that would have had any effect. And I guess I don't understand that, Judge, because we don't know that it would have had an effect. He refused to consider it under 3553. He's required to either consider it as a mitigating factor under 3553 or not. He refused to consider it at all, not because it wasn't material, because he decided that since I objected to classified materials, no one's going to talk about the issue at all. The government never took that position, Judge. At the 11-30-2018 hearing, they conceded the potential relevance of the classified materials. I said to the court at 11-30-2018, these materials are potentially relevant to sentencing. The government agreed. The government agreed we should get a continuance for me to get a security clearance. And Judge, it wasn't just that. They then filed a brief in response to the motion to dismiss indictment, which is at docket 305. And the government, which is contrary to what it's now telling the Seventh Circuit, said at that time, this is docket 305, government's response to the motion to dismiss indictment. Certainly, if it finds Mr. Barr credible, it can consider the conditions of his confinement in Saudi Arabia in fashioning an appropriate sentence in this case. So even the United States Attorney's Office realized this was potentially relevant. Conditions of his confinement is different than saying that he should get credit for that in some way, which is kind of what you're saying, like the indictment should have been dismissed. Well, that's my next issue, Judge. So I understand that. I agree with you. It's not a day-for-day credit. It's not, oh, he was in Saudi Arabia jail for six months, then he automatically gets credit. That's not the point. The point is under 3553, that's a mitigating factor, which the judge should and is required to consider, and he could take that into account in fashioning the appropriate sentence. Just as the United States government recognized and agreed, they made the same argument, the same concession as I did. With respect to Brady, Judge, I think that's a whole different issue. Number one, they waited 20 months to produce these documents until late November of 2018. Still no explanation as to why they withheld these Brady materials. They didn't produce them in response to a new request or a new motion. As Your Honor will recall, the Brady motion had been filed in March of 2017. At that time, they did not take the position that, oh, we shouldn't have to produce these materials because they're not relevant to sentencing. No. They sat down with counsel, provided some classified documents, but as you know, Your Honor, it took 20 months for then this trove of additional relevant materials to be produced. And they're very telling under Brady because contrary to the position they had taken with the district court for two years, the documents did show they're involved in efforts to arrest Mr. Barr in Saudi Arabia, and they did show that they knew about that. So there's- They certainly show they know about it. I mean, I think it would be up for debate whether it showed that this was at the government's behest, at the United States government's behest. Well, Judge, I would ask you to look at the- I read them. I looked at them. I believe there was a July- two emails in July of 2014 from U.S. intelligence officials saying that we have passed a memo on the high side, a classified document, to the Saudis asking for Mr. Barr to be arrested. I don't know if there's any more reasonable inference- They wanted him to be extradited. Well, that's not what- I'm sorry. Let me get a pen. Out of respect, but that's not what the documents say because they don't say we would like you to be extradited. They sent emails to Saudi intelligence, secret police, saying point blank, we have sent a memo on the high side, meaning classified, to arrest Mr. Barr. Nothing to do with the red notice, nothing to do with a violation of law in that country. And then in August, the U.S. intelligence is telling the AUSA and the FBI the Saudis have arrested him. And there was- in between that time, Judge, there was discussion about why is it taking the Saudis so long to arrest him? So the only reasonable inference is the secret police of Saudi Arabia arrested Mr. Barr on Saudi soil at the behest of the U.S. government. The only reasonable inference, therefore, is that it should be a 35-53 factor. And we still- And you think that's your best argument because I don't see why that's grounds for dismissing the indictment. If anything, it seems like sentencing would be the only- Yeah, Judge, I agree. That's a 35-53 argument, okay? Okay. Then we get to Brady, okay? So we have what I believe to be a clear Brady violation. It took 20 months and the eve of sentencing to produce the documents to me, which was a trove of clearly relevant materials. The documents I just explained to you, Your Honor, are the ones that say arrest him, Saudis have arrested him, talking about him being in Mahabith Jail. The Mahabith Jail and the conditions of it are explained in Mr. Barr's affidavit, but they're places where people are taken to be interrogated and abused. With respect to Brady, there's still no explanation as to why they waited 20 months. They never certified to the district court that their document production is complete in response to Brady. So Judge, I know it's a far-fetched position that you're going to- this court's going to dismiss his indictment. I don't think you were going to do that, quite frankly, Judge. It's relief we asked for the district court. But we are asking that this court find that when it's remanded for sentencing to consider 3553, that the U.S. government, the U.S. Attorney's Office, produce completely and certify that they've completed their production of the Brady materials and, Judge, that they give me access to the classified materials so we can have a fulsome discussion and argument under 3553. Do I expect the court to toss out the indictment? I don't. I do think it's appropriate, Judge, when there's a Brady violation and the U.S. government won't take a position with the district court as to whether they fully complied with Brady, that the district court has a duty and obligation to address that issue. It's an important issue for us, any defendant in this building, and any future defendant. The U.S. Attorney's Office is subject to the same ground rules as we are. That's why I think the Brady issue is extremely important, particularly when they never told Judge Norgel why they didn't produce, have they produced fulsomely, and what is the explanation for the non-production. So that's the Brady issue for us, Judge. Did you pursue the security clearance and get denied, or you just didn't pursue it? Judge, I didn't pursue it. If you remember, the judge said, no, I'm not going to give you the time. Sentencing isn't going to take place in 30 days. That's what happened. So I couldn't pursue it. Sure. I'm just wondering whether because of the appeal or maybe some 2255 later, you know, presumably. I don't know that I'm entitled to just seek security clearance without a reason for it. I didn't know if you would ask them or pursue that with the government at all. No, I didn't, Judge. When he told me, no, you're not going to attempt to do that, I didn't attempt to file a lawsuit. I'm not faulting you for it. I was just curious. No, I didn't pursue a lawsuit or any other means. And then the final issue with respect to the Saudi documents, Judge, is just the confidential classified documents that you've talked about earlier. Number one, I was denied access to those. And there's really not a reason, Judge. Three of the defendants in this case have never been sentenced. They've been sitting around for years, too. OK, so the idea that we have to proceed with Mr. Barr's sentencing immediately doesn't make any sense. And it's contrary to how each and every other defendant was treated in this case. Did restitution have anything to do with this? I'm sorry, restitution? The amount of restitution, the $12 million. Oh, in terms of the delay in the. I mean, is there a difference between you and the other conspirators, for example? I would say no, Judge. I would argue that, as we did at the sentencing hearing, we extensively cross-examined the agent. Our position was that we were less of whatever you're going to call leader, organizer, supervisor. The other gentlemen who haven't been sentenced, one's an attorney who was intimately involved in every single transaction. One is a recruiter who was involved in multiple sales of the units. If you recall, Mr. Barr pled guilty to his involvement in one unit. So he's trying to get away with one. Correct. Yeah. And with respect to the motion to withdraw the guilty plea, I would like to briefly address that issue. We believe that to say that a defense counsel is in this building does not fall below objective standards of reasonableness when they don't tell their client what the burden of proof is. You can't properly advise your client without telling what the burden of proof is in a case. When you have a client who's facing possibly 151 years in jail, and you don't tell them, hey, look, by the way, buddy, it's not going to be a reasonable doubt standard at sentencing. It's going to be preponderance, meaning that you have almost no chance on winning on this lawsuit. And so it's very important in this case, because here's Mr. Barr. He's got counsel. He gets a plea agreement from the government that says, hey, our range, our calculation is 121 to 151. And Mr. Barr is going to make a decision, a calculated decision like every defendant makes in this building. Do I plead guilty? Do I go to trial? What are the odds? What are the differences by going to trial versus pleading? And he's convinced that, hey, look, we've got a great argument on a loss amount. We can, even though it's a 20-level enhancement, which maybe gets you into over 100 months of time, we can argue this loss amount. Well, it's critically important to any defendant to understand, hey, look, you really don't have a shot. It's a preponderance of the evidence standard for the government to prove the loss amount of the sentencing hearing. It's not beyond a reasonable doubt. And I think the judge's plea colloquy in this case is very interesting. The government keeps coming back to it, but what Judge Norgal did is what judges always do. He told him six different times, the government has the burden of proving you guilty beyond a reasonable doubt. And twice he told Mr. Barr, the government always has the burden of proving you guilty beyond a reasonable doubt. So there's no way, based upon a plea colloquy, Mr. Barr would have walked away and said, gee, when I get to the sentencing, it's going to be any different. And we know that his counsel never instructed him that that was the case. So even Judge Norgal, the first time I appeared before him on 1130, one of the first things he said when I asked for a continuance, he said, are you going to file a motion to withdraw the guilty plea? I had just been in the case days. I said, I don't know yet. So even he understood the possibility of that happening. And then finally, with respect to the recusal issue, the standard is whether it creates the appearance of bias or impropriety, whether it suggests there's a deep-seated animosity by the district court to a side. The government, to its credit, the U.S. Attorney's Office, to its credit, below in their filings and here, has not tried to claim, Mr. Leonard's crazy, he's thin-skinned, he was treated the same as we are. No. They conceded that I wasn't, okay? And whether you tie it to a retaliatory motive or not doesn't matter, okay? If the treatment of me in that court is different, creates this appearance of impropriety, which it did. Did no one in that room thought that what was going on was normal? Because it wasn't. All we want is a level playing field as defense counsel. We know we have a difficult job, whether we're under the Criminal Justice Act or pro bono or being paid. All we want is equal treatment by the court, and that's all we're asking for this court. Just like in motion, I had to come in at the end of motion in front of Judge Norgal and defend the federal defender who was alleged to have been treated improperly, including by Judge Norgal asking for U.S. Marshals to come into the courtroom. I had to go into that environment as the new attorney, and you can see from the transcript the treatment that I received. So it's a reasonable inference by me to suggest to this court that it was retaliatory. But whether it's retaliatory or not doesn't matter. It's whether the treatment of me created the air of impropriety or there was a bias. Clearly, the government's, the court's conduct towards me is not what we would normally expect. And for those reasons, I would reserve, I think I have three minutes? I think you're over. You're over. By quite a bit. Okay. Sorry about that. Where is your client now? He is in custody, Judge. Where? He's in Wisconsin. Wisconsin. Yes. Thank you. What institution? I'm sorry? What type of facility is he in? A low-level facility, Judge. A low-level facility. But he's a 67-year-old gentleman with absolutely no criminal history who is serving an 87-month sentence, which is three times one of his co-defendants and one and a half times his attorney co-defendant. For those reasons, I'd ask the court to send it back to the district court to a different judge to get procedural fairness in this case. Thank you. Thank you. Good morning, and may it please the court. Suresh Appleby, body chargee for the United States. The district court's rulings on defendant's various motions were correct. Its ultimate sentencing decision was not an abuse of discretion, and it did not exhibit unfair bias or prejudice against the party seeking recusal here, the defendant. The conviction and sentence below should be affirmed. I'd like to start by addressing defendant's motion to withdraw his guilty plea and looking at the same place that Mr. Leonard focused upon, which is the change of plea colloquy. Defendant received all of the information at his change of plea colloquy that Rule 11 requires for his plea to have been knowing and voluntary. He was informed of the nature of the offense and the maximum statutory punishment. He was informed multiple times that the district court would make the ultimate sentencing decision, the guidelines calculations, and the determination of whether defendant would be sentenced within or outside the guidelines range. He was informed of the collateral consequences of his plea, including his disqualification from participating in the affairs of a financial institution, and he was informed of the government's position regarding the applicable loss amount under the guidelines. Under its plain language, Rule 11 requires no more, and what defendant advocates for here is a position that a mistake regarding the applicable burden of proof at sentencing, standing alone, is sufficient to render a plea involuntary. Notably, defendant has cited no authority to support that point, and in fact that position is squarely contradicted by this court's cases, such as Bolin, which stands for the proposition that a mistake regarding sentencing exposure, standing alone, does not render a plea involuntary, particularly whereas here there was a proper Rule 11 colloquy and defendant does not dispute that proposition. Counsel, can you talk about the Brady issue? I just want to make sure you have time to talk about that. Certainly, Your Honor. With respect to the detention in Saudi Arabia and the discovery that was produced, Your Honor, you referred to classified materials and unclassified materials. I want to start by focusing on the unclassified materials that were produced. Between March and November 2018, it's undisputed that the government produced voluminous records regarding defendant's incarceration in Saudi Arabia. It's also undisputed that the last production happened approximately one month before sentencing, and it's further undisputed that defendant made use of these records, first by filing his Brady motion and also referring to his Saudi Arabian incarceration in his written sentencing position that was filed with the district court. And so there was disclosure. The disclosure was made in time for defendant to make use of the materials, and defendant indeed made use of the materials. Under this court's standards for Brady violation, that means there's been no suppression. But what about the classified? The classified materials, as the court will note from the government's statement of facts in its briefing, were produced to defendant and his prior counsel. Defendant's prior counsel had a security clearance, and the government made these classified records available to defendant and his prior counsel sometime between March and November of 2018. It's true that defendant's new counsel, Mr. Leonard, has not had an opportunity to look at those classified materials because he does not have the required security clearance. And here, with respect to the sentencing continuance, what the district court did is it ultimately declined to grant the defendant an open-ended continuance so that his new counsel could apply for and receive a security clearance to review what was in total three documents, approximately a page or two in length, concerning a topic on which extensive discovery had already been produced, which defendant already put to use in not only his Brady motion but his sentencing position. And the ultimate question is, was that an abuse of discretion for the district court to decline to grant this open-ended continuance? On this record, the government submits it was not an abuse of discretion for three reasons. First, there's no evidence that Mr. Leonard, even if he had applied for a security clearance, would have actually received it, whether in two months, six months, or a year after he applied for it. Second, as the district court itself noted, defendant had access to the classified materials himself with his prior counsel, and so at the time that he made the decision to fire his counsel, hire new counsel, he knew that classified records were an issue, and yet he chose to hire counsel that did not have the necessary clearance. The district court put the risk of that on the defendant, and the government submits that that was not an abuse of discretion. The counsel he fired was appointed? Mr. Boyle, I believe, was appointed counsel, his prior counsel, who represented him. He didn't hire him in the first place, then. Well, he had retained counsel at his initial appearance. He got rid of that counsel. Mr. Boyle was appointed sometime, I believe, in 2014 or 2015, and stayed with defendants for a few years. The federal offender. Or panel counsel. Yes. Yes, Your Honor. On the issue of Cunningham error, the government agrees it would have been better if the district court would have just let the parties address the issue of Saudi Arabia at the sentencing hearing, and then stated its views regarding whether Saudi Arabia was important mitigation at the sentencing hearing itself. However, here we're operating under harmless error review, and this court should not remand for resentencing, because there are at least three reasons I believe the district court would impose the same exact sentence on remand. First, in a written opinion issued just one day before the sentencing hearing, the district court, as Judge Barrett noted, already expressed its views regarding the materiality of this evidence. The district court already stated that it did not view the topic of Saudi Arabia as particularly important to defendants' sentencing for criminal conduct that occurred within the Northern District of Illinois. There may be different ways to look at the relative importance of the Saudi Arabia issue, but the district court's view was an act of discretion, and it was not an abuse of discretion. Second, at the sentencing hearing itself, it's clear that the district court did consider what it viewed to be important mitigating factors, defendants' family circumstances, his age, his relative lack of a criminal history, and the district court acted upon those, what it considered important mitigating factors, to impose a sentence of 87 months, which was at a substantial downward variance from defendants' guidelines range. How did that compare to the other sentencing, the other conspirators? Of the co-defendants? I do believe Mr. Leonard is correct that this particular defendant received a higher sentence than his co-conspirators, but as the record also notes, there were certain guidelines enhancements applied for this defendant, a leader organizer enhancement, a sophisticated means enhancement, all of these things making defendants' starting point, his guidelines range, quite a bit higher at 121 to 151 months, and even faced with that higher guidelines range, the district court still imposed a below-guidelines sentence, which was 87 months. So that time in Saudi Arabia is, was the conspiracy over? Yes, Your Honor. It was all done then? The criminal conduct is alleged to have occurred between approximately 2007 and 2008. When we're talking about the incarceration in Saudi Arabia for defendants' failure to That occurs in 2014, years after the charged conspiracy. So they had no approximate time then? Correct. There's no overlap. Because there was a difference in the sentencing, that's all I'm pointing out, among the conspirators. That's right, Your Honor. And I assume within the restitution, although that seemed to be, what is it, $14 million? Whatever the million is. Something above $12 million, yes, Your Honor. And I'm sorry I don't have in front of me the restitution orders for the other. I just assume that each one was sentenced separately and perhaps differently. Yes, Your Honor. And the district court did permit Mr. Leonard at the record of the sentencing hearing to develop his arguments regarding disparate sentencing for similarly situated defendants. It's clear from the record that district court did consider that 3553A factor in making its ultimate sentencing consideration. It did consider the disparate, the allegation that there were disparate sentences for similarly situated defendants. Counsel, can I ask you a question? I mean, one thing that kind of troubles me about this case is, I mean, can the government satisfy its Brady obligations by producing Brady material and say, oh, whoops, it's classified, here you have it, but it doesn't get you no good because you can't read it. I mean, that's one aspect, but the other aspect, I mean, I can understand why the district court put the risk of changing counsel at the last minute on him. It was his 13th request for a continuance. He'd really been dragging it out. So, I mean, that adds, you know, a different spin to it. But can you address the overlap or, I don't know, how the classified nature of these materials interacts with Brady? In terms of disclosure, Your Honor, it's the government's position that it did produce, it did disclose even the classified materials to the defendant and his prior counsel. It just so happens the defendant's new counsel is not privy to that same classified information because he doesn't have... So it was given to him at the time that he still had the former lawyer Boyle? At some point between March and November 2018, it was in fact made available to Mr. Boyle. I thought it was made available a month before the sentencing hearing. So I'm glad you raised that issue, Your Honor. The production made in November 2018 concerns wholly unclassified documents. The production that was made in November 2018 concerns a batch of emails that were, albeit produced a month before sentencing, but those are all unclassified documents. And in their briefing on the Brady issue at dockets number 298 and 305, the parties attached those unclassified emails in arguing over their significance. Oh, okay. Well, then I did have a misunderstanding about the timeline. And so the security, the classified materials were actually produced months in advance of the sentencing hearing. It wasn't that he gave at the 11th hour, the government didn't say, oh, and here's some more classified materials. That's right, Your Honor. The defendant's Brady motion was not predicated on the classified materials. The classified materials formed the basis of his motion for a continuance, but the Brady claim was based exclusively on the government's November 2018 production of unclassified materials. And here the district court noted those unclassified materials were produced to the defendant in sufficient time for defendant to make use of them, and defendant did in fact make use of them. He filed a Brady motion, he mentioned the issue in his sentencing position. Were the classified materials documents of letters or so forth, or were it the other type of material? And Your Honor, Mr. Leonard pointed to certain emails that he exchanged with government's counsel that are attached to his motions, and I'll refer to those as well because that's what's in the record. The classified documents, as far as the record reflects, were approximately two or three memoranda of approximately one to two pages in length, which concerned the same topics that had been already produced to the defendant in the unclassified materials. I have not personally viewed the classified materials, and I cannot comment on what's in them, but I can say from what the government... You haven't seen them? I have not, Your Honor. And it's because I also don't have the necessary clearance to view those materials that the government's counsel before the district court and defendant's prior counsel had obtained. There wouldn't be anybody in your office who might have classified clearance? Yes, there are. And again, it would be the AUSAs, or at least one of the AUSAs who represented the government before the district court did have the necessary clearance and did, to the extent possible and in compliance with rules governing classified discovery, preview to Mr. Leonard what was in the classified materials without breaching the confidentiality of those materials, noted that they were three memoranda of approximately one to two pages in length that generally concerned the topic of defendant's detention. That's all the classified material we're talking about is three, at the most, memoranda of short length? That's correct. That is what defendant was seeking a continuance for, is so his new counsel could view three memoranda that his prior counsel had already seen with defendant present. So the defendant himself had reviewed those classified memoranda with his prior counsel? That's what the record reflects, Your Honor, yes. So this is not a situation in which even the defendant himself was denied access to the material the government produced? It's not, Your Honor, and that's precisely why the district court emphasized that in denying defendant's motion for continuance, the fact that defendant himself had access to the classified materials alerted him to the fact that classified materials were an issue in this case. And so when he made his new choice of counsel, the district court put on the defendant the burden of making sure he had an attorney who had the necessary security clearance so that there wouldn't be further delays from the need to clear a new attorney, a process that could have taken two months or six months or a year. We really just don't know based on the record as it stands. And so with the time that I have remaining, I'd briefly like to address defendant's motion for recusal. All of defendant's claims concerning alleged bias revolve around the district court's alleged antipathy towards Mr. Leonard. But as this court has noted in cases such as Sykes, antipathy towards a party's counsel standing alone does not justify recusal, particularly on a record like this, which shows that the district court did in fact act in defendant's favor on certain substantive issues. The district court sustained defendant's objection to the application of a certain guidelines enhancement. The district court imposed a sentence of 87 months, which was a substantial downward variance from defendant's guidelines range. And one thing that Mr. Leonard hasn't addressed is the procedural default claim. The district court concluded the defendant's recusal motion under section 144 was procedurally defaulted because defendant failed to attach a good faith certification from his counsel. There's no allegation that that good faith certification was ever tendered, even belatedly. And so on that ground alone, defendant's section 144 recusal claim is procedurally defaulted. I see that I'm almost out of time. If the court has no further questions, I would respectfully request that the conviction and sentence below be affirmed in their entirety. Let me take you back a minute to the classified material. Were they original documents or were they prepared describing things that occurred prepared particularly for this litigation? I'm not sure I have the basis to answer that because I don't know what's in those documents. I apologize, Your Honor. All right. Thank you. Thank you. I'll give you two minutes, Counsel. I appreciate that, Judge. Thank you. Just briefly, with respect to the Rule 11 issue, the question under Rule 11 by its own terms is whether we presented a fair and just reason for withdrawing the plea. We did based upon ineffective assistance of counsel. With respect to the important question of classified information, I'd like to direct the court's attention to its document, I believe, 309 and the 11 pages of email attachments. That shows that the AUSA in this case could not commit to me that they had produced all the classified materials to Mr. Barr's former counsel or to Mr. Barr. That's important because there is still an unanswered question as to whether all even the classified materials have been produced or whether all the rest of the Brady materials have been produced. They've never certified in the district court that they've complied with Brady. Counsel, under Brady, you also have to show that . . . I guess, what do you hope to get out of this? The district court also already knows the gist, that you say that the government was involved in his detention in Saudi Arabia. Do you think that the argument is going to change if you get more of the same? Is it just a better 3553 argument you want to make? Judge, I don't know that I'll get more of the same. I don't know what I'll get. Plus, there is a Brady violation, and it's important for it to not be ignored by the district court to know the extent of the violation and to take action. So, the court may conclude after we get full certification compliance from Brady that it's not appropriate to take any action at the U.S. Attorney's Office or that it matters, but we don't know the answer to that question. With respect to your question about the sentencing, 24 months and 63 months. The attorney, who was intimately involved in every transaction, got 63 months. The recruiter, who we argued had much more of a substantial relationship than Mr. Barr, got 24 months. And finally, with this question of certification, I filed an affidavit under oath detailing why I had a basis for a recusal. No one questioned it at that time, but when the judge issued his opinion, he said, you need a separate document called Certificate of Good Faith. When I put an affidavit together under oath attesting to the facts, I believe I'm certifying that I have a good faith basis under oath to make my recusal motion. I thank you for all of your consideration. Thank you, counsel. Thanks to both counsel and the cases taken under advisement.